```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
DAVID GALIT and GABRIELLE GALIT,
```

|  |  |
|---|---|
| *Plaintiff(s),* | **THIRD AMENDED COMPLAINT** |
| -against- | **05 CV 5515** |
| CITY OF NEW YORK, SERGEANT FRANK STEWART, LIEUTENANT NEWBAUER and HARRY HUGHES, | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| *Defendant(s).* | |

```
-----------------------------------------------X
```

The plaintiffs, DAVID GALIT and GABRIELLE GALIT by and through their attorneys, Young & Young, LLP, commences this action to redress the violation of Plaintiff DAVID GALIT and GABRIELLE GALIT'S rights under the Constitution and Laws of the United States and complaining of the defendants, CITY OF NEW YORK, SERGEANT FRANK STEWART, HARRY HUGHES and LIEUTENANT NEWBAUER alleges as follows:

## JURISDICTION AND VENUE

(1)     This is an action pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the depravation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to the plaintiff by the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States of America.

(2)     Jurisdiction is conferred on the Court by 28 U.S.C. Section 1343 (3), which confers original

jurisdiction on Federal District Courts in suits to redress the deprivation of rights, privileges and immunities as stated in paragraph 2 hereof.

(3)    Plaintiffs demand a trial by jury.

**PARTIES**

(4)    That at all times herein alleged, the Plaintiffs are and were citizens of the United States and residents of the County of Suffolk, State of New York. Plaintiffs have standing to bring an action pursuant to Title 42 U.S.C. §§ 1983 and 1988.

(5)    Upon information and belief, at all times herein relevant the defendants, SERGEANT FRANK STEWART, HARRY HUGHES and LIEUTENANT NEWBAUER, were and are within the State of New York, and are within the territory of the United States District Court, Eastern District of New York.

(6)    Upon information and belief, at all times herein relevant, the Defendant, CITY OF NEW YORK, is a municipal corporation duly organized and existing under the laws of the State of New York, within the venue of the United States District Court, Eastern District of New York.

(7)    Upon information and belief, at all times herein relevant, the Defendants, SERGEANT FRANK STEWART, LIEUTENANT NEWBAUER were and are currently employed by the County of Suffolk, as a Police Sergeant and Police Lieutenant, within

the venue of the United States District Court, Eastern District of New York.

(8)     At all times herein relevant, Defendant, HARRY HUGHES, was employed by Defendant, City of New York, as a Police Officer, within the venue of the United States District Court, Eastern District of New York.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

(9)     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked and numbered "1" through "8", inclusive with the same force and effect as though fully set forth herein.

(10)    That at all times herein relevant, the defendants, CITY OF NEW YORK, SERGEANT FRANK STEWART, HARRY HUGHES and LIEUTENANT NEWBAUER, acted separately and in concert with others under color and pretense of law, to wit: under color of statutes, ordinances, regulations, customs and usages of the County of Suffolk and the CITY OF NEW YORK.

(11)    Defendants did cause the prosecution of the plaintiffs by causing, continuing and participating in an investigation of the plaintiffs, with actual malice, suborning perjury, conspiring to suborn perjury, tailoring testimony, conspiring to tailor testimony, against the plaintiffs, withholding and destroying exculpatory evidence and offering such suborned perjurious and tailored testimony as evidence against

the plaintiffs, with actual malice, and signing or causing to be signed an accusatory instrument which alleged that the plaintiffs violated provisions of the Penal Law of the State of New York, without probable cause, justification, right or facts to make such allegations and with actual malice.

(12)    The defendants did conspire to violate the plaintiff, DAVID GALIT'S constitutional rights, privileges and immunities (hereinafter, rights) by arresting the plaintiff for alleged violations of New York Penal Law § 215.40 (tampering with physical evidence) and §240.50 (falsely reporting an incident).

(13)    That the above referenced criminal charges against plaintiff DAVID GALIT were favorably terminated against him on or about December 23, 2004.

(14)    The defendants did conspire to violate the plaintiff, GABRIELLE GALIT'S constitutional rights, privileges and immunities (hereinafter, rights) by arresting the plaintiff for alleged violations of New York Penal Law § 215.40 (tampering with physical evidence) and §240.50 (falsely reporting an incident).

(15)    That the above referenced criminal charges against plaintiff GABRIELLE GALIT were favorably terminated against her on December 5, 2002.

(16)    That as a result of the conduct alleged

4

in this complaint, plaintiff, DAVID GALIT, was maliciously prosecuted by the defendants.

(17)     That as a result of the conduct alleged in this complaint, plaintiff, GABRIELLE GALIT, was maliciously prosecuted by the defendants.

(18)     Plaintiff DAVID GALIT was and is innocent of the crimes charged against him as aforesaid.

(19)     Plaintiff GABRIELLE GALIT was and is innocent of the crimes charged against her as aforesaid.

(20)     Prior to May of 1999, defendant HARRY HUGHES made numerous sexual innuendos to GABRIELLE GALIT.

(21)     GABRIELLE GALIT declined MR. HUGHES advances repeatedly.

(22)     In or about May of 1999, Defendant HARRY HUGHES entered plaintiffs' home without being invited and accosted GABRIELLE GALIT while GABRIELLE GALIT was in her shower, naked.

(23)     In or about May of 1999, when defendant HARRY HUGHES entered plaintiffs' home without being invited and accosted GABRIELLE GALIT while GABRIELLE GALIT was in her shower plaintiff began screaming.

(24)     In or about May of 1999, when defendant HARRY HUGHES entered plaintiffs' home without being invited plaintiff DAVID GALIT and Vincent Agenjo were in the GALITS'

5

basement working on plumbing.

(25)    HARRY HUGHES ran from GABRIELLE GALIT'S bathroom and DAVID GALIT and Vincent Agenjo observed HARRY HUGHES run from the GALITS' home while GABRIELLE GALIT was still in the bathroom.

(26)    On July 15, 1999, defendant HARRY HUGHES threatened to kill plaintiff GABRIELLE GALIT stating, among other things, "I'll fucken bury you, in fact I'll fucken' cut you and your whole fucken' family, you fucken' cunt whore."

(27)    A police report was made regarding the July 15, 1999, incident and defendant HARRY HUGHES was arrested by Suffolk County Police Officer Stephen Yalamas.

(28)    Police Officer Yalamas advised GABRIELLE GALIT that she could go to the First District Court the following morning and speak to the Suffolk County District Attorney assigned to the case and obtain an order of protection.

(29)    GABRIELLE GALIT observed HARRY HUGHES being taken away by officer Yalamas in a marked police car on July 15, 1999.

(30)    At the Fifth Precinct police officer Yalamas discussed the matter with LIEUTENANT NEWBAUER.

(31)    On July 15, 1999, LIEUTENANT NEWBAUER was the commander of the Fifth Precinct Crime Section.

(32)    On July 15, 1999, LIEUTENANT NEWBAUER

advised police officer Yalamas to refer the case to the Crime Section.

(33)    On July 15, 1999, HARRY HUGHES was released by the Suffolk County Police with no charges.

(34)    On July 16, 1999, plaintiff GABRIELLE GALIT appeared at the First District Court of Suffolk County for the purpose of seeking an order of protection.

(35)    On July 16, 1999, court personnel at the First District Court of Suffolk County advised GABRIELLE GALIT that there existed no record that HARRY HUGHES was ever arrested and that as a result GABRIELLE GALIT could not obtain an order of protection.

(36)    On July 16, 1999, plaintiff DAVID GALIT contacted the Suffolk County Police Department's Fifth Precinct and spoke to LIEUTENANT NEWBAUER.

(37)    On July 16, 1999, LIEUTENANT NEWBAUER suggested to plaintiff DAVID GALIT that plaintiffs herein enter into mediation with defendant herein HARRY HUGHES before the matter "goes any further".

(38)    Plaintiff DAVID GALIT advised LIEUTENANT NEWBAUER that both he and GABRIELLE GALIT insisted that HARRY HUGHES be arrested.

(39)    LIEUTENANT NEWBAUER advised DAVID GALIT that SERGEANT STEWART would investigate the incident.

(40)     LIEUTENANT NEWBAUER assigned SERGEANT STEWART to investigate the July 15, 1999, incident.

(41)     Plaintiff DAVID GALIT subsequently made numerous attempts to contact SERGEANT STEWART which were unsuccessful and plaintiff DAVID GALIT left numerous messages for SERGEANT STEWART which were not returned.

(42)     SERGEANT STEWART did contact plaintiff DAVID GALIT and advised plaintiff that he was "investigating" the case and that he would contact plaintiffs when he required further information.

(43)     After plaintiff DAVID GALIT'S discussion with SERGEANT STEWART, plaintiff waited for approximately one (1) week and began calling the Fifth Precinct and leaving messages for SERGEANT STEWART approximately every three (3) days for approximately three (3) months.  None of his calls were returned.

(44)     Beginning in September of 1999, HARRY HUGHES began threatening GABRIELLE GALIT at her children's bus stop with words to the effect that she should engage in a "quickie", that he could tell his wife he had to run an errand and park his car "around the corner" then meet plaintiff at "the back of her house".

(45)     HARRY HUGHES further related on several occasions that he could and would rape GABRIELLE GALIT and get away with it because he was "a cop" and he knew all the "Suffolk

8

County cops".

(46)    Plaintiffs reported an incident to the police which occurred on October 27, 1999, when HARRY HUGHES videotaped plaintiff at her children's bus stop.

(47)    Police Officer Yalamas was dispatched and made a field report, however, Police Officer Yalamas failed to include HARRY HUGHES' name on the report.

(48)    As a result of the October 27, 1999, incident no action was taken, Police Officer Yalamas marked the report "closed" and no arrest was made.

(49)    Plaintiffs reported an incident to the police which occurred on October 28, 1999, when HARRY HUGHES threatened to "get" plaintiff.

(50)    Police Officer Yalamas was dispatched and made a field report, however, Police Officer Yalamas again failed to include HARRY HUGHES' name on the report.

(51)    As a result of the October 27, 1999, incident no action was taken, Police Officer Yalamas marked the report "pending" and no arrest was made.

(52)    Plaintiffs did not report other numerous and ongoing incidence at the bus stop, in the street and in front of their home to the police because plaintiffs feared retribution from the police since HARRY HUGHES was able to void his arrest of July 15, 1999, the patrol officer took no action when called and

HARRY HUGHES repeatedly stated to GABRIELLE GALIT at the children's bus stop that he [HARRY HUGHES] was "a cop" and knew all the "Suffolk County cops".

(53)    Plaintiffs decided to sell their home and leave the neighborhood to escape HARRY HUGHES.

(54)    Plaintiffs listed their home in or about January of 2000 for sale.

(55)    On March 17, 2000, HARRY HUGHES called the GALIT residence and advised GABRIELLE GALIT that he was watching her and that he was "gonna get [her]" in retaliation for reporting his previous conduct.

(56)    On March 17, 2000, GABRIELLE GALIT believed that HARRY HUGHES was intoxicated based upon his speech.

(57)    On March 18, 2000, DAVID GALIT appeared at the Suffolk County Police Department's Fifth Precinct with his Caller ID box to report the threatening phone call from HARRY HUGHES to the police.

(58)    On March 18, 2000, Police Officer Acevado took a report from DAVID GALIT regarding the Caller ID box.

(59)    Police Officer Acevado's March 18, 2000, report indicated that a telephone call was received from HARRY HUGHES by DAVID and GABRIELLE GALIT on March 17, 2000, as reported by the GALITS.

(60)      Police Officer Acevado advised DAVID GALIT to call NYPD Internal Affairs as well.

(61)      On or about March 18, 2000, DAVID GALIT contacted the NYPD Internal Affairs Bureau and reported the incident concerning HARRY HUGHES.

(62)      On March 22, 2000, Sergeant Dean of the NYPD Internal Affairs Bureau responded to DAVID GALIT'S home and took statements from plaintiffs.

(63)      On March 22, 2000, Sergeant Dean of the NYPD Internal Affairs Bureau observed the GALIT'S Caller ID box and observed that HARRY HUGHES had called the GALIT'S residence.

(64)      On March 22, 2000, Sergeant Dean of the NYPD Internal Affairs Bureau obtained a color photograph of the GALIT'S Caller ID box which was a fair and accurate depiction of what he observed, HARRY HUGHES' name and telephone number on the Caller ID box.

(65)      On April 3, 2000, DAVID GALIT contacted the Fifth Precinct via telephone and was advised that the charges against HARRY HUGHES had been dropped.

(66)      DAVID GALIT called the Suffolk County Police Department's Internal Affairs Bureau and made a complaint to the Internal Affairs Bureau via the telephone on April 3, 2000 complaining of the conduct of LIEUTENANT NEWBAUER, SERGEANT STEWART and Police Officer Cassidy and alleging a "cover up" with

11

regard to the July 15, 1999 incident.

(67)     DAVID GALIT was advised by Internal Affairs to contact SERGEANT STEWART'S supervisor LIEUTENANT NEWBAUER, which he did.

(68)     Plaintiffs corresponded with Congressman Rick Lazio on March 26, 2000, complaining of the conduct of LIEUTENANT NEWBAUER, SERGEANT STEWART and Police Officer Cassidy and alleging a "cover up" with regard to the July 15, 1999 incident.

(69)     Congressman Rick Lazio, or his staff, referred the matter to the Suffolk County Police Department.

(70)     The complaint which was referred by Congressman Rick Lazio, or his staff, to the Suffolk County Police Department was sufficient in itself to trigger an internal affairs investigation.

(71)     The internal affairs bureau of the Suffolk County Police Department referred the matter to the Suffolk County Police Department's Fifth Precinct commanding officer and/or executive officer.

(72)     The commanding officer and/or executive officer of Suffolk County Police Department's Fifth Precinct referred the matter to LIEUTENANT NEWBAUER for an investigation.

(73)     LIEUTENANT NEWBAUER referred the matter to SERGEANT STEWART to investigate the July 15, 1999, incident.

(74)     SERGEANT STEWART and Police Officer Cassidy investigated the July 15, 1999, incident together.

(75)     On May 8, 2000, SERGEANT STEWART called DAVID GALIT and advised him that he was still investigating the case arising from the incident which occurred on July 15, 1999, as well as the case arising from the March 17, 2000, incident.

(76)     In mid May of 2000, SERGEANT STEWART called DAVID GALIT and GABRIELLE GALIT to the Fifth Precinct to give written statements regarding the March 17, 2000, incident.

(77)     DAVID GALIT appeared at the Fifth Precinct and gave a written statement regarding the March 17, 2000, incident.

(78)     DAVID GALIT inquired of SERGEANT STEWART with regard to his investigation of the July 15, 1999, incident and SERGEANT STEWART advised DAVID GALIT that the March 17, 2000, incident was the stronger case based upon the evidence.

(79)     When DAVID GALIT appeared at the Fifth Precinct in May of 2000 to give a written statement, MR. GALIT recognized SERGEANT STEWART from HARRY HUGHES' house.

(80)     DAVID GALIT had previously seen SERGEANT STEWART at HARRY HUGHES' house socially.

(81)     GABRIELLE GALIT appeared at the Fifth Precinct, met with SERGEANT STEWART and signed a statement regarding the March 17, 2000, incident as well.

13

(82)    In May of 2000, SERGEANT STEWART called DAVID GALIT and asked plaintiff to send a digital picture of the Caller ID with the telephone call from HARRY HUGHES displayed via e-mail to the Suffolk County Police.

(83)    DAVID GALIT offered to bring the Caller ID box to SERGEANT STEWART, however, SERGEANT STEWART insisted upon a picture of Caller ID for his file.

(84)    After the picture was e-mailed to SERGEANT STEWART, HARRY HUGHES started telling the GALITS that they were "fucked" and the "cops" were on his side.

(85)    DAVID GALIT subsequently contacted SERGEANT STEWART regarding HARRY HUGHES conduct in telling the GALITS that they were "fucked" and SERGEANT STEWART advised DAVID GALIT that "something" would happen soon.

(86)    On May 25, 2000, SERGEANT STEWART and approximately twenty (20) other Suffolk County Police officers appeared at DAVID GALIT and GABRIELLE GALIT'S home with a warrant and searched the home.  The supporting affidavit for the warrant alleged that DAVID GALIT altered the digital photograph.

(87)    The police seized the GALITS' Caller ID box, cameras, security cameras, computers, videotapes of HARRY HUGHES approaching GABRIELLE GALIT and DAVID GALIT in their driveway and yard, and audiotapes of HARRY HUGHES threatening GABRIELLE GALIT on the telephone and at the bus stop.

14

(88)     SERGEANT STEWART'S warrant application specifically requested seizure of items from the GALITS' home.

(89)     The warrant obtained by SERGEANT STEWART from Judge Barbara Kahn permitted photography, videotaping and copying of items and computer files, not the seizure of items.

(90)     SERGEANT STEWART and members of the Suffolk County Police seized items in violation of the warrant issued by Judge Barbara Kahn.

(91)     Notwithstanding the fact that the Caller ID box was seized by the Suffolk County Police and in the possession of the Suffolk County Police no officer, detective or supervisor looked at the Caller ID box to determine whether HARRY HUGHES called the GALIT residence on March 17, 2000.

(92)     The Caller ID box was immersed in water and destroyed by members of the Suffolk County Police, upon information and belief under the direction of SERGEANT STEWART deliberately to destroy physical evidence.

(93)     Numerous audio and video recordings of HARRY HUGHES harassing DAVID GALIT and DAVID GALIT were destroyed and/or deliberately discarded by members of the Suffolk County Police, upon information and belief under the direction of SERGEANT STEWART deliberately to destroy physical evidence.

(94)     DAVID GALIT'S computers were disassembled and destroyed.

15

(95)     SERGEANT STEWART made the decision to arrest DAVID GALIT and GABRIELLE GALIT.

(96)     Upon information and belief, the sole reason the search warrant was sought and executed was to obtain and destroy physical evidence which proved DAVID GALIT and GABRIELLE GALIT'S innocence of the crimes which SERGEANT STEWART intended to charge the GALITS with violating.

(97)     SERGEANT STEWART requested and obtained the sole color photograph of the Caller ID box, not in the possession of the Suffolk County Police Department, from NYPD Internal Affairs Bureau.

(98)     Upon information and belief, SERGEANT STEWART obtained the color photograph of the Caller ID box from NYPD Internal Affairs Bureau to collect and destroy physical evidence which demonstrated the GALIT'S innocence of the crimes which SERGEANT STEWART intended to charge the GALITS with violating.

(99)     SERGEANT STEWART made the decision to arrest DAVID GALIT and GABRIELLE GALIT prior to any forensic analysis of the evidence which was illegally seized from the GALIT residence by the Suffolk County Police.

(100)    DAVID GALIT was arrested on June 22, 2000 and charged with New York State Penal Law §215.40 (Tampering with physical evidence) and Penal Law §240.50 (Falsely reporting

16

an incident in the 3d degree).

(101)    SERGEANT STEWART charged DAVID GALIT with New York State Penal Law §215.40 (Tampering with physical evidence) based upon SERGEANT STEWART'S conclusion that DAVID GALIT electronically tampered with the photograph of the Caller ID box.

(102)    SERGEANT STEWART came to the conclusion that DAVID GALIT tampered with a photograph of the Caller ID box notwithstanding the fact that HARRY HUGHES' name and telephone number were in fact on the Caller ID box.

(103)    SERGEANT STEWART charged DAVID GALIT with New York State Penal Law §240.50 (Falsely reporting an incident in the 3d degree) based upon SERGEANT STEWART'S conclusion that HARRY HUGHES did not call the GALIT residence on March 17, 2000.

(104)    GABRIELLE GALIT was arrested on June 22, 2000, while picking up her children in front of her children's school in view of teachers and other parents and charged with New York State Penal Law §215.40 (Tampering with physical evidence) and Penal Law §240.50 (Falsely reporting an incident in the 3d degree).

(105)    SERGEANT STEWART charged GABRIELLE GALIT with New York State Penal Law §215.40 (Tampering with physical evidence) based upon SERGEANT STEWART'S conclusion that DAVID

GALIT electronically tampered with the photograph of the Caller ID box.

(106)    SERGEANT STEWART came to the conclusion that GABRIELLE GALIT tampered with a photograph of the Caller ID box notwithstanding the fact that HARRY HUGHES' name and telephone number were in fact on the Caller ID box.

(107)    SERGEANT STEWART charged GABRIELLE GALIT with New York State Penal Law §240.50 (Falsely reporting an incident in the 3d degree) based upon SERGEANT STEWART'S conclusion that HARRY HUGHES did not call the GALIT residence on March 17, 2000.

(108)    All the events described above were utterly without probable cause, justification, or excuse in fact and/or in law and with actual malice; there existed no lawful authority for the defendants, County of Suffolk, CITY OF NEW YORK, SERGEANT FRANK STEWART, HARRY HUGHES and LIEUTENANT NEWBAUER and others unknown to accuse, harass, seize and prosecute the plaintiffs with actual malice, or cause the plaintiff to be accused, harassed, seized and prosecuted with actual malice.

(109)    That in denying plaintiffs their constitutional rights, unlawfully and maliciously prosecuting plaintiffs with actual malice, defendants were at all times acting within the general ambit of their duties as agents of the

County of Suffolk and the CITY OF NEW YORK.

(110) As a direct and proximate result of the foregoing acts, violations of the plaintiff's Constitutional rights and malicious prosecution, the plaintiff, DAVID GALIT, has feared and continues to fear a repetition of said acts, has continued to suffer anxiety, extreme emotional distress, public humiliation and embarrassment, loss of liberty, legal expense, shock, fright and has incurred substantial pecuniary losses as a result of the arrest all to his damage for which the defendants are liable pursuant to 42 U.S.C. § 1983, jointly and severally.

### AS AND FOR A SECOND CAUSE OF ACTION

(111) Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked and numbered "1" through "110", inclusive with the same force and effect as though fully set forth herein.

(112) Defendants, SERGEANT FRANK STEWART, HARRY HUGHES and LIEUTENANT NEWBAUER and others unknown, acted individually and jointly as agents of the County of Suffolk and the CITY OF NEW YORK willfully, knowingly and purposefully with the specific intent and actual malice to deprive the plaintiffs of their right to be free from malicious prosecution.

(113) As a direct and proximate result of the foregoing acts, violations of the plaintiff's Constitutional rights and malicious prosecution, the plaintiffs have feared and

19

continue to fear a repetition of said acts, have continued to suffer anxiety, extreme emotional distress, public humiliation and embarrassment, loss of liberty, legal expense, shock, fright and has incurred substantial pecuniary losses as a result of the malicious prosecution all to their damage for which the defendants are liable pursuant to 42 U.S.C. § 1983, jointly and severally.

### AS AND FOR A THIRD CAUSE OF ACTION

(114)    Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked and numbered "1" through "113", inclusive with the same force and effect as though fully set forth herein.

(115)    Defendants herein engaged in a conspiracy to deprive plaintiffs of their constitutional rights.

(116)    As a direct and proximate result of defendants' conspiracy, violations of the plaintiffs' Constitutional rights and malicious prosecution, the plaintiffs have feared and continue to fear a repetition of said acts, have continued to suffer anxiety, extreme emotional distress, public humiliation and embarrassment, loss of liberty, legal expense, shock, fright and has incurred substantial pecuniary losses as a result of the malicious prosecution all to their damage for which the defendants are liable pursuant to 42 U.S.C. § 1983, jointly and severally.

### *AS AND FOR A FORTH CAUSE OF ACTION*

(117)        Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked and numbered "1" through "116", inclusive with the same force and effect as though fully set forth herein.

(118)        That the City of New York did hire and vest in the defendant HARRY HUGHES, the authority of Police Officer within the State of New York.

(119)        That the City of New York was informed by the plaintiffs herein of the conduct of HARRY HUGHES.  This notification was made by plaintiffs to the New York City Police Department's Internal Affairs Unit.

(120)        That said City of New York assigned officers of the New York City Police Department's Internal Affairs Unit, Sergeant Dean, to investigate the conduct complained of by the plaintiffs, of it's Police Officer HARRY HUGHES.

(121)        That said officer did interview the plaintiffs at their home prior to the arrest of plaintiffs.

(122)        That the internal affairs officer were shown a caller identification box which clearly and unequivocally demonstrated that the defendant HARRY HUGHES had called the plaintiffs' home on March 17, 2000.

(123)        That the plaintiffs detailed all the

21

other misconduct of HARRY HUGHES which included him observing GABRIELLE GALIT in the shower and HARRY HUGHES' arrest and subsequent and secret un-arrest by Suffolk County Police.

(124)    The internal affairs Sergeant advised plaintiffs that he would "get back to them".  The plaintiffs called the internal affairs officer numerous times.

(125)    Plaintiffs were thereafter informed by NYPD Internal Affairs that the New York City Police Department's Internal Affairs Unit had turned the investigation over to the SERGEANT STEWART of the Suffolk County Police Department.

(126)    Plaintiff DAVID GALIT advised the internal affairs Sergeant from New York City that SERGEANT STEWART of Suffolk County Police Department was observed numerous times at the home of HARRY HUGHES and that he believed that SERGEANT STEWART was assisting HARRY HUGHES to avoid criminal charges.

(127)    Plaintiff DAVID GALIT further advised the internal affairs Sergeant from New York City that SERGEANT STEWART would cover up this matter as he and LIEUTENANT NEWBAUER had previously done when HARRY HUGHES was arrested then un-arrested.

(128)    Pursuant to an established practice of taking citizen complaints lightly all of the plaintiffs' complaints were disregarded and the internal affairs Sergeant

22

informed plaintiff DAVID GALIT that the NYPD was not concerned with HARRY HUGHES' conduct outside of New York City and this was a problem for Suffolk County Police.

(129)    Sergeant Dean met with SERGEANT STEWART and discussed the serious complaints lodged against HARRY HUGHES by plaintiffs.

(130)    That these officers determined the best way to protect HARRY HUGHES was for Suffolk County to "handle" and dismiss the investigation, since an open investigation by the New York City Internal Affairs Unit could not be easily closed, based upon such complaints. If the matter was assigned to another law enforcement agency to investigate the matter they could then close their file without repercussion or review.

(131)    Thereafter DAVID GALIT contacted SERGEANT STEWART and requested to know why he was taking over the investigation from the New York City Internal Affairs Unit, to which he was informed "I am taking it over that's all there is to it".

(132)    Plaintiff informed SERGEANT STEWART that he had previously done nothing to help him or his wife regarding the prior conduct of HARRY HUGHES and it was obvious that this would be another cover-up by Suffolk County Police.

(133)    That the conduct of the City of New York as performed by Sergeant Dean of the Internal Affairs Unit

23

resulted in the plaintiffs' constitutional rights being violated by the conduct and conspiracy of the defendants to maliciously prosecute and deprive them of their freedom as guaranteed by the United States Constitution.

(134)    The City of New York had a policy or custom which allowed it's officers to deliberately ignore the violations complained of by turning over any review and investigation of the misconduct of it's officer as well as physical evidence to an outside agency, Suffolk County, notwithstanding a complaint that such outside agency, Suffolk County, clearly failed to conduct any meaningful review.

(135)    The City of New York declined to investigate it's officer in an open and ostentatious manner which gives rise to an inference that the conduct of the City of New York complained of herein was a policy and custom of New York City.

(136)    That subsequent to the arrests of plaintiffs, a copy of the accusatory instruments and worksheets were forwarded to Sergeant Dean [NYPD] by SERGEANT STEWART [SCPD] which clearly set forth that plaintiffs were charged with altering a photograph of the Caller ID box.

(137)    As set forth above, Sergeant Dean saw the Caller ID box with HARRY HUGHES name and telephone number on it.

24

(138)    Sergeant Dean deliberately ignored the fact that the charges against plaintiffs herein were absolutely untrue based upon what he in fact observed at plaintiff's home.

(139)    Sergeant Dean forwarded his color photograph of the Caller ID box to SERGEANT STEWART to ensure that said picture would no longer be in existence in the NYPD internal affairs file or anywhere else.

(140)    Further, the City of New York failed to train and supervise both it's officer, HARRY HUGHES, and those officers assigned to investigate claims against HUGHES.

(141)    The City of New York's failure to train and supervise it's officers and investigating officers resulted in the injuries to plaintiffs.

**WHEREFORE:** Plaintiffs demand judgment against the defendants as follows:

A.    Against the defendants jointly and severally in an amount to be determined by the trier of fact; and

B.    Against the defendants jointly and severally on the conspiracy claim in an amount to be determined by the trier of fact; and

C.    Against the City of New York on the Monell claims in an amount to be determined by the trier of fact; and

D.    Against defendants for punitive damages in a sum to be determined by the trier of fact; and

E.    Reasonable attorneys fees pursuant to 42 U.S.C. § 1988 and the costs and disbursements in this action; and

F.    Any further or different relief that to this Court seems just proper and equitable.

DATED:    Central Islip, New York
          December 3, 2010

                                        _____
                                        Patrick F. Young, (PFY-9509)
                                        Young & Young, LLP
                                        Attorneys for Plaintiff
                                        GABRIELLE GALIT
                                        863 Islip Avenue
                                        Central Islip, NY  11722
                                        (631) 224-7500


                                        _____
                                        Arthur V. Graseck, Esq.
                                        Attorney for Plaintiff
                                        DAVID GALIT
                                        1870 Spur Drive South
                                        Islip Terrace, NY  11752
                                        (631) 277-6543